(121 So. 517)

McFRY v. STEWART. (7 Div. 860.)

Supreme Court of Alabama. March 21, 1929.

Rehearing Denied April 18, 1929.

Rutherford Lapsley, of Anniston, for appellant.

Merrill & Jones, of Anniston, for appellee.

See, also, 218 Ala. 21, 117 So. 464.

BOULDIN, J. ■ Appellee treats the bill as one filed under Code, § 10390, new to the present Code. Its sufficiency is not questioned in argument on this appeal. In averment and prayer the bill is good as one to enforce the liens of registered judgments under Code, §§ 7874, 7875. Gurley v. Robertson, 178 Ala. 326, 59 So. 643.

We need not and do not decide whether it makes a case under Code, § 10390. Ex parte McFry (Ala. Sup.) 117 So. 464.[1] The superiority of the judgment liens over the title of respondent, claiming through the judgment debtor after due registration, is not questioned.

Reversal of the decree foreclosing the judgment liens is sought upon two grounds: First, a denial of complainant's ownership of the judgment.

■ Complainant, O. L. Stewart, claims through assignments made by attorneys for the plaintiff in the judgment. An attorney to

[1] 218 Ala. 21.

make collection has no implied authority to assign a judgment on behalf of his client.

In the absence of proof to the contrary, the authority of the attorney or a ratification of his act may be inferred from long acquiescence on the part of the owner of the judgment. Gardner v. Mobile & N. W. R. Co., 102 Ala. 635, 15 So. 271, 48 Am. St. Rep. 84. But where, as here, it is affirmatively shown that the attorney had no authority, and reported it as a collection merely to a nonresident client, we see no ground to infer or presume ratification. The client having no occasion to further concern himself about the judgment, nothing to put him on inquiry, knowledge of the assignment as a basis of ratification cannot well be imputed to him.

But it is further affirmatively shown that the larger judgment, greater in amount than the value of the property involved, was assigned without recourse to the father of the judgment debtor, in consideration of the full amount thereof paid in money; that the attorney remitted to plaintiff the full amount, less attorney's fees. This complainant is an assignee for value from the first assignee.

The transaction was wholly in the interest of the plaintiff in the judgment, involving no liability on him. In such case equity often presumes acceptance.

Whether so or not, in this case it is manifest the assignment or sale of the judgment was not void, but voidable merely. As to the purchaser, it was a fully executed transaction. The assignor must become the actor, if he would rescind the transaction. Silence and inaction on his part after knowledge is a ratification as matter of law. He cannot ratify in part; cannot hold the fruits of the transaction and deny to the other the benefits accruing to him; cannot hold both the money and the judgment. It follows the right of rescission is personal to the assignor, the plaintiff in the judgment. In equity the assignee will be treated as the owner of the judgment as against strangers to the transaction in no way subject to loss because of the voidable character of the assignment. This is but the logical result of the application of well-known legal and equitable principles.

The second defense relied upon is equitable estoppel. The facts in this regard, as set up by answer, not now dealing with the evidence, are: R. L. Miller sued out an attachment for rent against Elbert Formby, the judgment debtor, and caused it to be levied on the property in suit, the fixtures and equipment of a barber shop. Pending the attachment suit, the tenant in possession was directed by the constable to pay, and did pay, the weekly rentals to O. L. Stewart, the complainant in this suit, as agent for Miller, plaintiff in the attachment suit. Two to three weeks after the attachment was levied, respondent R. W. McFry instituted a claim suit under the statute. It is averred that complainant,

Stewart, actively assisted Miller in resisting such claim as against the attachment, and, failing to defeat respondent's claim, a month later sought to interpose a second claim suit, which was denied, and judgment went for claimant McFry.

The estoppel sought to be set up is an alleged inconsistent position in judicial proceedings by reason of complainant having acted as agent and assisting friend of Miller in the attachment suit. The doctrine relied upon is that a party or quasi party, who successfully asserts a stated cause of action or defense in one litigation, is thereafter estopped to assert a contrary and inconsistent cause of action or defense, to the hurt of his adversary. Tobias v. Morris, 126 Ala. 535, 28 So. 517; Stephens v. Head, 119 Ala. 511, 24 So. 738; Luling v. Sheppard, 112 Ala. 588, 21 So. 352; Wheeler v. Armstrong, 164 Ala. 442, 51 So. 268; Tygh v. Dolan, 95 Ala. 271, 10 So. 837; Hodges v. Winston, 95 Ala. 517, 11 So. 200, 36 Am. St. Rep. 241; Millitello v. B. F. Roden Grocery Co., 190 Ala. 675, 67 So. 420.

In the first place, there was no inconsistency in friendly assistance to Miller and the later assertion of complainant's own superior claim. The issue in the claim suit was between Miller and McFry. Both Miller and complainant may have had liens superior to the claim of McFry. If the property of the debtor in attachment, it was subject to levy by Miller, subject to the superior lien of complainant. Moreover, Miller's attachment suit failed. After the claimant interposed his claim, the attachment suit was not prosecuted further.

Where no benefit has accrued on the one part, nor injury suffered on the other, by the conduct complained of, there is no basis for estoppel. Again, this complainant did seek to interpose his own superior claim before the claim suit was finally disposed of, and has consistently sought to do so ever since. Ex parte McFry, 218 Ala. 21, 117 So. 464.

As touching the alleged misconduct of Stewart in his sympathy for Miller in the attachment suit, we think it fair to mention some further disclosures of the evidence. Elbert Formby, the judgment debtor, being in a press, applied to respondent McFry for a loan of $500, offering the barber shop outfit for security. McFry having some apprehension that Miller had a lien, at his request Formby obtained from Miller a letter saying it was free and unincumbered so far as he was concerned. The money was loaned on a bill of sale. The lessee thereafter paid the rents to McFry, $12.50 per week for 45 weeks, $562.50, an amount greater than the loan and lawful interest. At the end of that time, Miller sued out his attachment for rent on the building occupied by the barber shop. But

meantime Formby had given a further instrument admitting default under his contract with McFry, and that title passed to McFry on May 1st.

The effect of the dealings between Formby and McFry was to treat the payments to May 1st, aggregating more than $400, as compensation for the use of $500 for some nine months. It appears the use of Miller's building was part consideration for the rents being paid to McFry. Under these conditions, we can see no ground for criticism of Stewart, as Miller's friend, in lending aid, if he could, in collecting Miller's rents.

In applying the doctrines of equity, the equities on both sides are to be considered. We agree with the trial court in the decree granting relief to complainant.

Affirmed.

ANDERSON, C. J., and GARDNER and FOSTER, JJ., concur.